830 So.2d 867 (2002)
DELTA PROPERTY MANAGEMENT, Appellant,
v.
PROFILE INVESTMENTS, INC., Appellee.
No. 1D01-3181.
District Court of Appeal of Florida, First District.
October 14, 2002.
Rehearing Denied November 21, 2002.
John R. Beranek of Ausley & McMullen, Tallahassee, and John R. Hargrove and W.
*868 Kent Brown of Heinrich Gordon Hargrove Weihe & James, P.A., Ft. Lauderdale, for Appellant.
William S. Graessle of William S. Graessle, P.A., Jacksonville, for Appellee.
ALLEN, C.J.
The appellant, Delta Property Management, Inc. (Delta), challenges a final summary judgment in favor of the appellee, Profile Investments, Inc. (Profile), entered in this action to quiet title to real property purchased in a tax sale. Concluding that the clerk of the circuit court satisfied the statutory requirements in providing notice of the tax sale, we affirm the summary final judgment.
Prior to the sale, the property was owned by Delta. When Delta failed to pay its 1997 ad valorem taxes, a tax certificate was issued. After Delta failed to redeem the tax certificate within two years, Profile applied for a tax deed in April of 2000. Pursuant to section 197.502(4), Florida Statutes, the tax collector prepared a statement listing Delta as a party entitled to notice, and specified Delta's address as it appeared on the 1999 tax assessment roll, the most recent assessment roll at the time. The tax collector forwarded the statement to the clerk of the circuit court on May 30, 2000. The clerk then prepared a notice of tax sale and mailed it to Delta on September 4, 2000, at the address indicated in the statement. Because Delta was no longer located at the address specified in the statement, the notice was returned to the clerk as undeliverable. Profile thereafter placed the winning bid at the tax sale.
Profile brought an action to quiet title to the property in its favor, and Delta counterclaimed asserting that it was still the titleholder because the clerk had failed to provide proper notice of the sale. Profile and Delta each moved for summary judgment, with the dispositive legal issue being whether the clerk had complied with the statutory notice requirements of section 197.522(1), Florida Statutes, when he relied exclusively upon the tax collector's statement in preparing the notice of the tax sale. The trial court granted summary judgment in favor of Profile, concluding that the clerk was not required to look beyond the statement to determine whether the names and addresses of the parties were correctly listed on the tax collector's statement.
Section 197.502(4), Florida Statutes, provides that when the holder of a tax certificate applies for a tax deed, the tax collector must deliver to the clerk of the circuit court a statement that includes a list of persons to be notified prior to the sale of the property. Among those persons that must be listed is the legal titleholder. And if the legal titleholder as revealed by the public record is the same as the person to whom the property was last assessed, which both parties agree is the case here, "the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll." Section 197.522(1) then requires the clerk of the circuit court to notify by mail the persons listed in the tax collector's statement at least 20 days before the tax sale. Significantly, the statute provides that "[i]f no address is listed in the tax collector's statement, then no notice shall be required." And the statute further provides that "[t]he failure of anyone to receive notice as provided herein shall not affect the validity of the tax deed issued pursuant to the notice." The key issue with regard to the notification process is whether the clerk followed the proper procedures, not whether notice was actually received. Dawson v. Saada, 608 So.2d 806 (Fla.1992).
*869 Delta does not assert that the tax collector failed in any manner to properly perform his responsibilities under the statute when he accurately indicated in his statement that Delta was the legal titleholder as reflected by the public records, and specified Delta's address as it appeared in the then-most-recent tax assessment roll, the 1999 tax roll. Delta instead places blame upon the clerk, contending that the 2000 tax assessment roll had been prepared by the time the clerk mailed his notice of the tax sale, and that if the clerk had examined this more recent tax roll he would have learned that Delta's mailing address had changed between the times that the 1999 and 2000 rolls were prepared.
Although section 193.023(1), Florida Statutes, provides that the property appraiser shall complete his or her assessment of the value of all property no later than July 1 of each year (the statute also provides that, upon good cause shown, the Department of Revenue may grant an extension of this deadline), there is no evidence in the record in this case that the 2000 roll was indeed prepared, submitted, or certified by July 1, 2000, or that it was otherwise available to the clerk prior to his mailing of the required notice on September 4, 2000. The record includes a printout of the 2000 roll, which lists Delta's new address, but the printout does not contain any dates corresponding to the applicable time period here: May 30 to September 4, 2000. Because there is no indication in the record that the 2000 assessment roll was actually prepared, certified, or otherwise available to the clerk prior to September 4, 2000, Delta's argument lacks evidentiary foundation in the record. Nevertheless, because this case involves a summary final judgment, and because it is entirely possible that the 2000 tax roll was prepared, certified, or otherwise available to the clerk prior to September 4, 2000, we do not decide this case on the basis of the record's failure to confirm this fact. We instead conclude that the order under review must be affirmed even if the 2000 roll was available to the clerk prior to September 4, 2000. This is so because the clerk had no duty to look beyond the tax collector's statement in preparing the notice of tax sale.
Prior to 1985, the tax collector, as now, was required to deliver a statement to the clerk certifying the names and addresses of all persons entitled to notice of an upcoming tax sale. See § 197.241(2), Fla. Stat. (1983). The clerk was then required to perform a diligent search of the official public records, including the most current tax roll, and provide notice to the applicable parties at the addresses produced by the search. See § 197.256, Fla. Stat. (1983). If, after a diligent search, no address could be found, no notice was required. In 1985, however, the legislature altered these statutory procedures. It repealed section 197.241, replacing it with the newly-created section 197.502. See Ch. 85-342, § 126, at 2090; § 187, at 2118-20, Laws of Fla. It then deleted all requirements in section 197.256 (renumbered as 197.522) that the clerk perform a diligent search of the public records to ascertain the names and addresses of the parties entitled to notice, and instead provided, as reflected in the current statute, that the clerk would be required only to send notice to those parties listed in the tax collector's statement. See Ch. 85-342, § 189, at 2120-22, Laws of Fla. And if no address was listed on the statement, no notice was required. Accordingly, with the 1985 statutory amendments, the clerk has been relegated to performing a purely ministerial function when providing notice of an upcoming tax sale. The clerk is no longer required to ascertain which parties are entitled to notice and diligently search *870 the public records for proper addresses, but can instead rely exclusively upon the information contained in the tax collector's statement. Because this is precisely what the clerk did in the present case, he fully satisfied his responsibilities.[*]
Delta also complains that the clerk failed to provide a mortgagee with proper statutory notice of the tax sale. Without determining whether Delta has standing to assert this claim, we observe that the clerk also complied with the statutory requirements in providing notice to the mortgagee because the notice given was entirely consistent with the information contained in the tax collector's statement.
The summary final judgment is accordingly affirmed.
KAHN, J., CONCURS; ERVIN, J., DISSENTS WITH WRITTEN OPINION.
ERVIN, J., dissenting.
I respectfully dissent for two separate reasons. First, I cannot agree with the majority's conclusion that no evidentiary foundation supports appellant's argument that the clerk failed to rely on the 2000 tax assessment roll at the time he mailed the notice of tax sale to Delta, because nothing in the record shows the property appraiser prepared, submitted or certified the tax roll on or before the date of mailing. Neither can I agree with the majority's conclusion of law that even if the 2000 roll was available to the clerk as of the time of mailing, the clerk nevertheless complied with the statutory requirements by sending notice to appellant in accordance with the tax collector's statement.
As the majority's opinion reflects, this is an appeal from a final summary judgment. The rule in Florida has long been that the party moving for summary judgment bears the burden of proving the nonexistence of any genuine issue of material fact, and if the slightest doubt remains as to the presence of such issue, the doubt shall be resolved against the moving party and summary judgment denied. See Cole Taylor Bank v. Shannon, 772 So.2d 546 (Fla. 1st DCA 2000); Mayerlen v. Brumos Motor Cars, Inc., 765 So.2d 935 (Fla. 1st DCA 2000).
The record discloses that in December 1999, Delta provided the tax collector with its correct, current address in Hallandale, Florida. Thereafter, on May 30, 2000, the tax collector forwarded to the clerk of the circuit court Delta's former address in Duval County as it appeared on the 1999 tax assessment role. Section 193.023(1), Florida Statutes (1999), required the 2000 tax assessment roll to be completed on July 1,
2000, unless the Department of Revenue extended the time for good cause. The only record reference to the completion of the tax roll is a printout of the 2000 roll, prepared on April 25, 2001, by a deputy clerk in the property appraiser's office, listing Delta's new address, and stating that it was a copy of the original as it appeared in the files of the appraiser. The *871 document was otherwise silent, however, as to the date when the 2000 tax rolls were in fact certified.
In my judgment, we are required to presume on the basis of this record that the property appraiser complied with the command of section 193.023(1) that he complete the assessment of the value of all property no later than July 1 of the year, subject to any appropriate extension. It is a long established rule that elected and public officials are presumed to perform their duties in a lawful and proper manner. See County of Palm Beach v. State, 342 So.2d 56, 58 & n. 1 (Fla.1976); Straughn v. Tuck, 354 So.2d 368 (Fla.1977); Bystrom v. Equitable Life Assurance Soc'y of the United States, 416 So.2d 1133 (Fla. 3d DCA 1982). As explained by Professor Ehrhardt, presumptions that implement public policy are rebuttable presumptions codified under section 90.304, Florida Statutes, which affect the burden of proof, and, "[b]ecause of the harm that would result to society and the individual if the presumed fact is disproved, a greater burden is placed upon a party to disprove the presumed fact." Charles W. Ehrhardt, Florida Evidence § 304.1, at 104 (2002 ed.).
Under the circumstances, because appellee presented no proof that the property appraiser failed to comply with the statutory certification deadline, I am of the firm opinion that we must presume he carried out the duty imposed by law.
The majority, however, affirms the order based on its legal interpretation of the applicable tax statutes, stating that even if the 2000 tax roll was available to the clerk before the mailing of the notice, the clerk had the right to rely solely upon the information contained in the tax collector's statement, regardless of whether such information may have then been incorrect, because the clerk had no duty to look beyond the statement in preparing his notice. In my judgment, the majority's construction requires a careful examination of the applicable statutes. In addition to the requirement in section 193.023(1), directing the property appraiser to complete the assessment roll by July 1 of each year unless the time is extended for good cause, section 197.502(4)(a), Florida Statutes (1999), provides:
(4) The tax collector shall deliver to the clerk of the circuit court a statement that payment has been made for all outstanding certificates or, if the certificate is held by the county, that all appropriate fees have been deposited, and stating that the following persons are to be notified prior to the sale of the property:
(a) Any legal titleholder of record if the address of the owner appears on the record of conveyance of the lands to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, then the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll.

(Emphasis added.)
The specific procedure regarding the mailing of the tax sale notice is set out in section 197.522(1)(a), Florida Statutes (1999), which states:
The clerk of the circuit court shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed in the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed *872 in the tax collector's statement, then no notice shall be required.
(Emphasis added.)
Construing the three above statutes in pari materia, I conclude (1) that unless excused under the circumstances specified in the statute, the property appraiser must complete his or her assessment of the value of all property in the county by July 1 of each year; (2) that the tax collector must provide to the clerk of the circuit court a statement of all delinquent legal titleholders of record based on the tax roll for the year in which the property was last assessed; and (3) that the clerk, in sending the notice to the legal titleholder that an application for a tax deed has been made and a sale will be held thereon, must forward the notice to the legal titleholder of record as described in the tax collector's statement, which must be based on the latest tax assessment roll.
In deciding that the clerk of the circuit court did all that was statutorily required in furnishing notice of the pending tax sale, the majority states, as did the court below, that the pertinent tax statutes no longer place any duty on the clerk to perform a diligent search of the public records to ascertain the names and addresses of the parties entitled to notice, and that the clerk now is required to rely exclusively upon the information contained in the tax collector's statement, regardless of whether such information may be outdated at the time of mailing. What the majority and the lower court apparently fail to understand, however, is that sections 197.502(4)(a) and 197.522(1)(a), when construed in pari materia, require the clerk to mail the notice to the record titleholder's address as it appeared on the latest assessment roll, which in this case was required by law to have been completed as of July 1, 2000. As stated, the notice was not mailed until September 4, 2000, more than two months thereafter. It seems altogether clear to me that the clerk simply did not comply with his statutory duty.
If the applicable notice statutes can be interpreted, as the majority has done, as authorizing the clerk to send a notice to a titleholder at an incorrect address based on a tax roll that had been superseded by a later roll containing the correct address at the time of mailing, such interpretation, in my judgment, would have serious constitutional implications.
In Dawson v. Saada, 608 So.2d 806, 808 (Fla.1992), the Florida Supreme Court made a distinction between section 197.522(1), pertaining to the clerk's mailing of a pending tax sale notice, and section 197.522(2), which requires the sheriff to serve notice of the tax sale on the legal titleholder of record. The court construed subsection (1) as meeting constitutional due process requirements by mandating notice reasonably calculated to apprise landowners of the pending deprivation of their property. This interpretation of the statute was obviously premised upon Mennonite Board of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), which the court quoted as follows: `"[K]nowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending."' Dawson, 608 So.2d at 810. As further explained in Adams,
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the ... property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.
462 U.S. at 800, 103 S.Ct. 2706 (emphasis added and omitted).
*873 In Dawson, 608 So.2d at 809, the Florida Supreme Court clearly stated that strict compliance with the mailing provisions of section 197.522(1) was necessary in order to carry out the notice requirements of due process. To construe the statute otherwise would, in my judgment, bring into question its constitutional validity. Moreover, under early common law, every presumption was made against the validity of a tax sale, and one claiming under such a sale had to prove strict compliance with the appropriate statutory provisions. Id. at 808.
It is true that common law restrictions have been relaxed by the adoption of statutory provisions. Nevertheless, the rule is clear that a statute does not change the common law unless it expressly states that it does, or it is so repugnant that the two cannot coexist. See State v. Ashley, 701 So.2d 338 (Fla.1997); Wal-Mart Stores, Inc. v. McDonald, 676 So.2d 12 (Fla. 1st DCA 1996), approved sub nom. Merrill Crossings Assocs. v. McDonald, 705 So.2d 560 (Fla.1997). Nothing in the applicable statutes as above cited provides that the clerk of the circuit court can avoid his or her ministerial duty to afford notice to the property owner whose name and address appears in the last assessment roll as of the time of the mailing of such notice.
In reaching its decision the majority would affirm even if the 2000 tax roll was available to the clerk as of the date he mailed the notice. Its assumption of such fact would logically include as well the fact that if the tax collector's statement had been properly updated, it would have included the correct mailing address of appellant. Because, however, the clerk, in the majority's opinion, did all he was required by law to do in relying on the information contained in the statement, he need look no farther, even though he knew, or had reason to know, that the information might be outdated because it was not based on the latest assessment roll, which he was aware at the time of mailing, had superseded the 1999 roll.
The majority appears to say that an onerous burden would be placed on the clerk if he were required to do otherwise; that he would then be forced to conduct a laborious search of the public records in order to ascertain the correct names and addresses of the persons listed in section 197.502(4) before sending the notice. I do not understand sections 197.502(4)(a) and 197.522(1)(a) to impose any such burden on the clerk. To me, a reasonable interpretation of them is that the clerk is simply directed to request the tax collector, once he is aware that the information contained in a statement may no longer be current because it was based on a tax roll since superseded, to supply him with a supplemental statement reflecting any updated material. In any event, no evidence was submitted below regarding what type of procedure would be required to update facts in a statement that might no longer be in effect because they were provided in an outdated roll. In the absence of such evidence, I would not indulge in any speculation that the burden of supplementing information based on an obsolete tax roll would cause any great discomfort to the clerk's office.
For all of the above reasons, I dissent.
NOTES
[*] The dissent would effectively rescind the 1985 statutory enactments by construing section 197.522(1)(a)'s directive that the clerk send notice of the tax sale to "the persons listed in the tax collector's statement pursuant to s. 197.502(4)" to mean that the clerk must search the public records to identify the correct names and addresses of the persons referenced in section 197.502(4) (legal titleholders, lienholders, mortgagees, and vendees of contracts for deed) as of the date that the clerk sends out his notice of the tax sale, and provide notice of the sale to all such persons discovered by the search at the addresses revealed by the search. This is the very procedure rejected by the legislature in 1985. Section 197.522(1)(a) is therefore properly read to mean that the clerk satisfies the statutory directive when he gives the specified notice to "the persons listed in the tax collector's statement."