PER CURIAM.
Profile Investments, Inc. (Profile) appeals a final summary judgment invalidating a tax deed and denying Profile’s motions for summary judgment against the appellees. Profile also appeals a corrected final judgment to Profile for damages in favor of Profile and against DPI, Inc. in the amount of $290,755.41, accrued during Profile’s use and occupancy of the subject party. We reverse and remand with instructions to the trial court to enter judgment in favor of Profile. Our ruling moots the damages award.

BACKGROUND

When Delta failed to pay its 1997 ad valorem taxes, the City of Jacksonville/Du-val County Tax Authority issued a tax certificate, which Profile purchased in April 1998. In April 2000, after Delta failed to redeem the tax certificate within two years, Profile applied for a tax deed under section 197.502(1), Florida Statutes (1999), which states in pertinent part:
The holder of any tax certificate, other than the county, at any time after 2 years have elapsed since April 1 of the year of issuance of the tax certificate and before the expiration of 7 years from the date of issuance, may file the certificate and an application for a tax deed with the tax collector of the county where the lands described in the certificate are located. The application may be made on the entire parcel of property or any part thereof which is capable of being readily separated from the whole.
The events that ensued have been summarized as follows:
Thereafter, the tax collector, pursuant to section 197.502(4), Florida Statutes (1999), prepared a statement which listed Delta as a party entitled to notice and specified Delta’s address at it appeared on the 1999 tax assessment roll, the most recent assessment roll at the time of the issuance of the statement. The tax collector forwarded the statement to the clerk of the circuit court on May 30, 2000. The clerk then waited over three months before preparing a notice of tax sale, which was mailed to *1015 Delta on September 7, 2000, at the address indicated in the tax collector’s statement. Because Delta was no longer located at the address specified in the statement, the notice was returned to the clerk as undeliverable. Profile thereafter placed the winning bid at the tax deed sale.
Profile brought an action to quiet title to the property in its favor, and Delta counterclaimed, asserting that it was still the titleholder because the clerk had failed to provide proper notice of the sale. Profile and Delta each moved for summary judgment with the dispositive legal issue being whether the clerk had complied with the statutory notice requirements of section 197.522(1), Florida Statutes (1999), when he relied exclusively upon the tax collector’s statement in preparing the notice of the tax sale. The trial court granted summary judgment in favor of Profile, concluding that the clerk was not required to look beyond the statement to determine the names and addresses of the parties were correctly listed on the tax collector’s statement. The First District Court of Appeal agreed and affirmed the summary judgment.
Delta Prop. Mgmt., Inc. v. Profile Inv., Inc., 875 So.2d 443, 444-45 (Fla.2004), reversing 830 So.2d 867 (Fla. 1st DCA 2002).
In determining the clerk’s duties and obligations as to sending notices of tax sales, the Florida Supreme Court construed the relevant statutes as follows:
Section 197.522(l)(a) unequivocally indicates that the clerk of the circuit court must notify by mail those persons listed in the tax collector’s statement of any pending tax deed sale. Additionally, section 197.502(4)(a) clearly states that, “if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, then the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll.” [emphasis added by Florida Supreme Court] When read together, these statutory provisions require the clerk to mail a notice of tax deed sale to the legal titleholder at the titleholder’s address as it appears on the latest assessment roll. When the clerk in the instant case mailed the notice to Delta on September 7, 2000, the latest assessment roll was, presumptively, the 2000 roll, not the 1999 roll, because section 193.023(1) mandates that the roll be updated “no later than July 1 of each year.” § 193.023(1), Fla. Stat. (1999). [emphasis added by Florida Supreme Court] The clerk should have obtained an updated assessment roll from the tax collector, if available, but he failed to do so. Thus the clerk erred by mailing the notice to Delta at the address listed in the tax collector’s statement (i.e., the 1999 address) without determining if the 2000 tax assessment roll was available. If we were to hold otherwise, Delta would be denied its property without due process of law.
Delta, 875 So.2d at 447. The Florida Supreme Court concluded:
[T]he clerk waited more than three months before noticing and setting the tax deed sale. By that time, the titleholder’s address had changed. The notice of the tax deed sale should have been mailed to the titleholder’s new address if that address was “reasonably ascertainable” from the latest tax assessment roll.... We find that the clerk’s notice of a tax deed sale must be mailed, pursuant to section 197.502(4)(a), to the legal titleholder at the titleholder’s address as it appears on the latest assessment roll at the time the notice of *1016 the tax deed sale is sent. Therefore, we quash the decision of the First District in this ease and remand for further proceedings consistent with this opinion.
Delta, 875 So.2d at 448.
On remand to the trial court, Profile moved for summary judgment on the ground that the 2000 tax roll allegedly containing Delta’s new address had not been completed and certified when the notices of sale were mailed and, thus, was not available to the clerk. Accordingly, Profile asserted that the Clerk’s new duty as imposed by the Florida Supreme Court would have yielded the same result because the 2000 assessment roll did not become available to the clerk before the clerk mailed notices of sale. The trial court nevertheless quieted title in Delta. Profile appealed, and we reversed for the following reason:
On remand, the trial court did not allow Profile to present any new evidence concerning the availability of the tax assessment roll and entered summary judgment in Delta’s favor. We find there is a factual dispute over whether Delta’s new address was reasonably ascertainable from the latest tax assessment roll available at the time the clerk mailed the notice of the tax deed sale. Because there are genuine issues of material fact that are in dispute, summary judgment is not appropriate.
See Profile Inv., Inc. v. Delta Prop. Mgmt., Inc., 913 So.2d 661, 662 (Fla. 1st DCA 2005). Through protracted litigation, then, including two summary judgments, two appeals to this court, and review by the Florida Supreme Court, this case moved inexorably toward resolution on the question of whether an updated tax roll would have been available to the clerk and, if so, whether such roll would have allowed the clerk to provide better notice to Delta.
On the most recent remand, Delta and Profile engaged in discovery. Profile again moved for summary judgment on the ground that the undisputed facts demonstrated no “updated assessment roll,” supposedly prepared by the property appraiser’s office -on July 1, would have been available to the tax collector or the clerk. Discovery had revealed that July 1 of each year commences the process of updating the assessment roll, which culminates in the certification of a final tax roll. In this case, certification occurred in October, or more than two months after the notices of sale were prepared and served by the clerk and one month after the sale of the subject property. Additionally, Profile proved that even if (for the sake of argument only) the tax collector’s office could have accessed the ongoing updating process when it compiled the information for the clerk regarding who should receive notice of the tax sale, Delta’s purported “new” address was not contained in the property appraiser’s records and, thus, was not available to the tax collector’s office or to the clerk when the notices of sale were mailed.
The limited determination required by the Florida Supreme Court’s opinion in Delta was thus resolved. Resourcefully, however, Delta argued that the intervening decisions in Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), and Vosilla v. Rosado, 944 So.2d 289 (Fla.2006), imposed additional requirements on the taxing authorities. The trial court entered a final summary judgment invalidating the tax deed on the ground that Jones and Vosilla rendered the Florida Supreme Court’s instructions to the trial court in Delta “moot.” The trial court held that because the notice of sale sent to Delta via certified mail had been returned as undeliverable, the clerk had reason to believe that the tax collector’s statement no longer reflected the titlehold *1017 er’s correct address. The court construed Jones and Vosilla as requiring the clerk to take additional steps, beyond those mandated by statute, to provide notice to the titleholder.

ANALYSIS

We find dispositive here the trial court’s failure to rule within the narrow scope of the determination required by the Florida Supreme Court in Delta, 875 So.2d at 446-48, and acknowledged in our opinion in Profile, 913 So.2d at 662. The sole question within the scope of previous remands was whether the 2000 assessment roll was available to the clerk of the court when it mailed the notices of sale and, if so, whether Delta’s alleged “new” address was contained therein. The discovery undertaken and filed in the trial court in connection with Profile’s motion for summary judgment demonstrated conclusively that no updated assessment roll existed at the time the notices of sale were mailed in this case. The “latest assessment roll” available to the tax collector in compiling the list of those to whom notices of a tax sale are to be sent, and at what address, was, in fact, the roll certified in October 1999.
That the sole issue of law regarding notice, and ruled upon in the earlier appeals, had essentially been resolved is significant:
“The doctrine of the law of the case is ... a principle of judicial estoppel.” Fla. Dep’t of Transp. v. Juliano, 801 So.2d 101, 102 (Fla.2001). It applies when “successive appeals are taken in the same case.” Id. It requires that questions of law actually decided on appeal must govern the case in the appellate court and in the lower tribunal in all subsequent stages of the proceeding. Id. Its purpose is “to lend stability to judicial decisions and the jurisprudence of the state, as well as to avoid ‘piecemeal’ appeals and to bring litigation to an end as expeditiously as possible.” Strazzulla v. Hendrick, 177 So.2d 1, 3 (Fla.1965). Although the doctrine is “a self-imposed restraint that courts abide by,” State v. Owen, 696 So.2d 715, 720 (Fla.1997), once made by the appellate court, such decisions “will seldom be ... reconsidered or reversed.... ” “Under the law of the case doctrine, a trial court is bound to follow prior rulings of the appellate court as long as the facts on which such decision are based continue to be the facts of the case.” Juliano, 801 So.2d at 102.
Parker Family Trust I v. City of Jacksonville, 804 So.2d 493 (Fla. 1st DCA 2001).
In our view, this case is controlled by a species of the doctrine of law of the case. It matters not that the decisions in Jones and Vosilla had not been rendered before either of the previous appeals to this court, or the review in the Florida Supreme Court. As the attorney for Delta clearly acknowledged at oral argument, the facts in this case have never changed. Under the “law of the case” doctrine, then, Delta’s theory of further action on the part of the clerk could have been raised in the infancy of this case, some eight to nine years ago. That such claim was not raised in the various earlier iterations of this case subjects the parties here to the rule articulated by the Florida Supreme Court in Juliano, relied upon by this court in Parker Family Trust — the trial court is bound by the prior rulings of the appellate court “as long as the facts on which such decision are based continue to be the facts of the case.” Juliano, 801 So.2d at 101-02.
Here, the principles of stability in judicial decisions and economy of litigation are poorly served by allowing an entirely new theory in this case, both at the eleventh hour of litigation and after two previous final dispositions by the trial court and *1018 thorough appellate review in this court and in the Florida Supreme Court. Accordingly, the trial court should have entered summary judgment in favor of Profile on the only claim Delta ever raised for adjudication in the prior appeals.
Consideration of the fact, as well as the procedural posture of the present litigation, demonstrates why Jones and Vosilla are inapposite here. In Jones, the United States Supreme Court reaffirmed the controlling rule of notice in these types of cases:
Due process does not require that a property owner receive actual notice before the government may take his property. Dusenbery [v. United States, 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)] Rather, we have stated that due process requires the government to provide “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”
Jones, 547 U.S. at 226, 126 S.Ct. 1708. The Jones Court observed that the relevant Arkansas statute requires only that the state provide notice by certified mail and then nothing more upon failure of such mail delivery. Id. The Court also noted, however, “Many states already require in their statutes that the government do more than simply mail notice to delinquent owners, either at the outset or as a follow up measure if initial mailed notice is ineffective,” id. at 228, and specifically identified Florida as a state that already requires more than simple mailed notice. Id. n. 2. Accordingly, although we have concluded that Jones should not have been applied in the present case, we nonetheless note that here Delta never complained about the adequacy of Florida’s statutory procedure (as did the petitioner in Jones throughout), but, instead, argued successfully that the clerk must utilize the most recently available tax roll in determining to what address notice should be sent.
In Vosilla, the delinquent taxpayers lost their residence as a result of unpaid ad valorem taxes when the county sent notice to an old address despite the established fact that the owners had expressly provided the tax collector and the clerk in advance with an updated and correct mailing address, receipt of which was acknowledged by the clerk of the court. See Vosilla, 944 So.2d at 291. The Florida Supreme Court specifically avoided any consideration of whether section 197.522 is facially unconstitutional and instead found a due process deprivation where the “taxing authority receives actual notice from the titleholder of a change of address but sends the notice of the tax deed sale to the former address.” Id. at 293. Again, and supporting our analysis here, we note that Delta did not challenge the statutory procedure, but instead argued that such procedure encompassed an obligation to utilize the latest available tax assessment roll. The Florida Supreme Court agreed. See Delta, 875 So.2d at 448. With respect, it appears here that the learned trial judge, intending in good faith to apply the rule of Vosilla, found section 197.522 unconstitutional on its face, as denying procedural due process, a question clearly reserved by the court in Vosilla, and never raised here by Delta.
To summarize, then, the United States Supreme Court, in Jones, required additional steps, because the Arkansas statute was inadequate. The Florida court in Vo-silla required additional steps, but focused upon the context in which the case arose. The Vosilla court borrowed language from the seminal United States Supreme Court decision of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), observing *1019 that “[determining whether a particular method of notice is ‘reasonably calculated’ to provide adequate notice requires ‘due regard for the practicalities and peculiarities of the case,’ ” including the fact that the owners had provided the correct notice to the taxing authorities, triggering a due process requirement that the clerk of court take additional reasonable steps to notify the owners of the tax deed sale. Vosilla, 944 So.2d at 294. Again, Delta has never relied upon a “practicalities and peculiarities” exception to the statutory requirement, but instead has consistently argued that the statute itself required use of the updated tax roll.
Based upon a resolution of the issues of fact and law litigated throughout this case, and resolved during successive appeals, we REVERSE the summary judgment in favor of the appellees and REMAND with instructions to enter summary final judgment in favor of Profile on the validity of the tax deed. Our ruling on this disposi-tive issue moots the judgment determining damages.
WOLF, KAHN, and VAN NORTWICK, JJ., concur.