# Third District Court of Appeal
## State of Florida

Opinion filed February 5, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D23-1043 & 3D23-1172
Lower Tribunal No. 22-3355

_____

## Dafero Investments, LLC,
Appellant,

vs.

## Estrella De Oro, LLC, et al.,
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Ariana Fajardo Orshan, Judge.

The Alderman Law Firm, and Jason R. Alderman and Troy A. Tolentino, for appellant.

Fors Attorneys at Law, and Jorge L. Fors, Jr., and Daniel C. Fors, for appellee Estrella De Oro, LLC; Steven F. Samilow, P.A., and Steven F. Samilow (Weston), for appellee 801 SMA Designer Suites Condominium Association, Inc.

Before LOGUE, C.J., and EMAS and SCALES, JJ.

LOGUE, C.J.

Dafero Investments, LLC, appeals a final summary judgment invalidating its deed to a condominium unit purchased at a tax deed sale. The unit was originally owned by Estrella De Oro, LLC, but had been noticed for sale pursuant to tax certificates issued when Estrella De Oro failed to pay its property taxes for three years. In the trial court, Estrella De Oro challenged the sufficiency of the notice it was given of the tax deed application. The notice, directed at both the address of the property and the address for Estrella De Oro listed on its deed to the unit, included regular mail, certified mail, attempted service by the Sheriff, and posting notices at both addresses. The notice also included publication in the Daily Business Review. Estrella De Oro conceded this notice complied with all statutory requirements, but contended constitutional due process required the Clerk to investigate Estrella De Oro's corporate records for the name of its registered agent available through the Florida Division of Corporation's website. The trial court agreed and invalidated the tax deed. We reverse.

## Background

Estrella De Oro acquired title to a residential condominium unit located at 801 S. Miami Avenue, Miami, Florida 33131 (the "Property") on June 29, 2018. It failed to pay the assessed ad valorem taxes on the Property for the years 2018 through 2021. As a result, a tax certificate was issued, and the

2

certificate holder thereafter applied for the issuance of a tax deed on April 21, 2021.

On December 10, 2021, the Clerk of Court mailed the Notice of Application for Tax Deed by certified mail and regular mail to the physical address of the Property, and to 4779 Collins Avenue, Apt. 4205, Miami Beach, Florida 33140, the address listed for Estrella De Oro on the Property's warranty deed. Both certified mailings and three regular mailings of the notices were returned to the Clerk between December 29, 2021 and January 27, 2022.

On December 14, 2021, the Clerk also delivered the notices to the Miami-Dade Sheriff for service. The Sheriff tried to effectuate service at the address in the Tax Collector's records and at the Property. When the Sheriff could not obtain service, it posted notices at each location on December 20, 2021. Finally, the Clerk published the Notice in the Daily Business Review newspaper on January 6, January 13, January 20, and January 27, 2022.

The Clerk conducted an auction sale of the Property on February 10, 2022, and Dafero was the successful bidder. The Clerk granted Dafero a tax deed to the Property on February 11, 2022.

On February 22, 2022, Dafero filed an action against Estrella De Oro to quiet title and for possession of the Property. Estrella De Oro countersued

3

for declaratory relief, arguing its due process rights to receive notice of the tax sale were violated and, thus, the tax deed was invalid. Both parties moved for summary judgment.

Estrella De Oro argued that due process required the Clerk to take additional steps to locate Estrella De Oro after the notices sent by certified and regular mail were returned to the Clerk as undelivered and after the Sheriff's attempts to serve the notice were unsuccessful.

In support of its motion for summary judgment, Estrella De Oro submitted the affidavit of its principal, Jorge Luis Peynetti. Mr. Peynetti, who resides in Mexico, attested that shortly after Estrella De Oro acquired the Property, he suffered health issues that required extensive hospitalization and prevented him from traveling and managing his affairs. As a result, the Property's tax bills went unpaid. Mr. Peynetti further averred that during the time in which the Clerk attempted to deliver notices, both the Property and Estrella De Oro's secondary address were vacant, and that he first learned of the tax deed sale when Dafero served its complaint on Estrella De Oro's registered agent. Estrella De Oro contended constitutional due process required the Clerk to investigate Estrella De Oro's corporate records for the name of its registered agent available through the Florida Division of Corporation's website.

4

Dafero, in turn, argued it was entitled to summary judgment because the Clerk satisfied the statutory notice requirements of Chapter 197, Florida Statutes, which satisfied Estrella De Oro's due process rights. Both sides relied upon the Clerk's file, which contained: (i) the Certification of Tax Deed Application; (ii) title search report; (iii) Estrella De Oro's warranty deed; (iv) the notices sent by certified and regular mail and their returns; (v) the Sheriff's returns of service and notice of postings; (vi) the Tax Deed; (vii) the Clerk's Certificate of Mailing; and (viii) the notice of surplus funds from tax deed sale.

On May 25, 2023, the trial court entered a final summary judgment denying Dafero's motion and granting Estrella De Oro's motion. The trial court found it was undisputed that the Clerk mailed, via certified and regular mail, the notice to Estrella De Oro and that these mailings were returned as undeliverable. The trial court further found it was undisputed that the Clerk did not take any additional steps to notify Estrella De Oro after receiving the returned mail. The trial court concluded that constitutional due process imposed a duty on the Clerk to take additional steps to provide notice and its failure to do so required that the tax deed be set aside.

On June 14, 2023, the trial court entered its second judgment in this matter relating to the unwinding of the tax sale that led to the tax deed

invalidated by the May 25th judgment. In it, the trial court awarded attorney's fees to Estrella De Oro and ordered the return of the bid proceeds to Dafero, less a setoff for rents Dafero collected while in possession of the Property. These appeals timely followed.

## Legal Analysis

The parties to this appeal agree the notice provided to Estrella De Oro complied with the statutory requirements. We must decide whether that notice was adequate to comply with constitutional due process. As Justice Scalia has advised, "due process is flexible and calls for such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 930 (1997) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The particular situation here concerns the tail-end of an elaborate process to collect ad valorem real estate taxes still unpaid by Estrella De Oro dating back to tax year 2018.

As an owner of property, Estrella De Oro was on notice that it had to pay ad valorem property taxes. Under Florida's tax laws, all owners of real property "are held to know that taxes are due and payable annually and are responsible for ascertaining the amount of current and delinquent taxes and paying them before April 1 of the year following the year in which taxes are assessed." § 197.122(1), Fla. Stat. Having failed to pay the taxes on its

6

property, Estrella De Oro was on notice that statutory collection efforts would commence: "[T]he law charges property owners with notice of the operation of tax laws." Harris v. City of Sarasota, 181 So. 366, 369 (Fla. 1938).

"[T]o keep government running by assuring a steady flow of tax revenues," "governmental entities [ ] collect delinquent taxes via sales of tax certificates and then [sell] those certificates to non-governmental purchasers." Turnberry Invs., Inc. v. Streatfield, 48 So. 3d 180, 184–85 (Fla. 3d DCA 2010). The holder of the tax certificate may file for an application for a tax deed "at any time after 2 years have elapsed since April 1 of the year of issuance of the tax certificate and before the cancellation of the certificate." § 197.502(1), Fla. Stat. Significantly, until the money for the tax deed is paid, the owner of the property has the right to redeem the property by paying off the tax certificate and related costs. § 197.472(1), Fla. Stat.

Section 197.522, Florida Statutes, provides the general requirements for notice before the commencement of a tax deed sale. These processes are informed by the fact that the delinquent taxpayer is already on notice of its responsibility to pay taxes and its failure to pay the taxes. The statute requires, in pertinent part, that the clerk of the circuit court notify the legal titleholder "by certified mail with return receipt requested" that an application for a tax deed has been made. § 197.522(1)(a), Fla. Stat. The clerk of court's

7

certification of mailing identifying the parties the notices were sent to and the date of mailing "shall be prima facie evidence of the fact that the notice was mailed." § 197.522(1)(c), Fla. Stat. The statute also provides that a printed copy of the notice published in the newspaper "shall be deemed sufficient notice." § 197.522(1)(e), Fla. Stat. The statute further provides that "[t]he failure of anyone to receive notice as provided [in section 197.522] shall not affect the validity of the tax deed issued pursuant to the notice." § 197.522(1)(d), Fla. Stat.

Section 197.522 further requires that the sheriff notify the record legal titleholder of the property. § 197.522(2)(a), Fla. Stat. The clerk is required to provide the sheriff with the original notice and copies and the sheriff must serve said notice "as specified in chapter 48; [however,] if the sheriff is unable to make service, he or she shall post a copy of the notice in a conspicuous place at the legal titleholder's last known address." Id. The statute also states that "[t]he inability of the sheriff to serve notice on the legal titleholder shall not affect the validity of the tax deed issued pursuant to the notice." Id.

Notably, section 197.522 provides that:

> [T]he clerk of the circuit court may rely on the addresses provided by the tax collector based on the certified tax roll and property information reports. The clerk of the circuit court has no duty to seek further

8

> information as to the validity of such addresses, because property owners are presumed to know that taxes are due and payable annually under s. 197.122.

§ 197.522(3), Fla. Stat. (emphasis added). But the statute also provides that "[n]othing in this chapter shall be construed to prevent the tax collector, or any other public official, in his or her discretion from giving additional notice in any form concerning tax certificates and tax sales beyond the minimum requirements of this chapter." § 197.522(4), Fla. Stat.

Despite the Legislature's indication in section 197.522(3) that "[t]he clerk of the circuit court has no duty to seek further information[,]" Estrella De Oro argued, and the trial court agreed, that due process under the constitution imposed a duty on the Clerk and Sheriff to seek further information to locate Estrella De Oro. In particular, Estrella De Oro claims that the Clerk and Sheriff could have located it by going outside of the Clerk's and Tax Collector's records and researching Estrella De Oro's corporate documents, which were available on the Florida Division of Corporation's website.

Estrella De Oro argues this step was required under Jones v. Flowers, 547 U.S. 220 (2006), Vosilla v. Rosado, 944 So. 2d 289 (Fla. 2006), and Delta Property Management v. Profile Investments, Inc., 87 So. 3d 765 (Fla. 2012), decisions by the United States and Florida Supreme Courts

9

addressing the constitutional due process required before a state may sell a property for unpaid taxes. We read these cases, however, as expressly rejecting a requirement of the type of open-ended efforts to locate a delinquent taxpayer suggested by Estrella De Oro, precisely because the "situation here" concerns the end of the elaborate tax collection process.

In Jones, the Arkansas Commissioner of State Lands attempted to notify property owner Jones, who no longer resided at the property, of his tax delinquency and his right to redeem the property. Jones, 547 U.S. at 223-24. The Commissioner sent notice by certified mail to the property's address, but the certified letter, marked unclaimed, was returned to the Commissioner. Id. After an offer to purchase the property was received, the Commissioner mailed another certified letter to the same address. Id. at 224. This letter also was returned unclaimed, and the property was sold. Id.

After learning of the sale, Jones filed suit, alleging that the Commissioner's failure to provide notice of the sale resulted in the taking of his property without due process. The trial court granted summary judgment in favor of the defendants, and the Arkansas Supreme Court affirmed. Id. at 224–25. The United States Supreme Court overturned the decision, concluding that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to

10

the property owner before selling his property, if it is practicable to do so." Id. at 225.

The Supreme Court identified steps it considered reasonable that the Arkansas taxing authorities failed to take. The steps identified by the Supreme Court were (1) resending notice to Jones by regular mail, (2) posting notice on the front door of the property, or (3) sending a notice addressed to "occupant" by regular mail. Id. at 235. In so doing, the Court made clear that these steps were not intended to define the minimum or maximum required by due process which involves consideration of the unique circumstances under consideration.

But the Court expressly held that reasonable steps did not require a search of the records of other governments or even the local phone book: "We do not believe the government was required to go this far." Id. at 236. The Court expressly rejected the idea that the process involved an "open-ended" attempt to locate the delinquent taxpayer: "An open-ended search for a new address—especially when the State obligates the taxpayer to keep his address updated with the tax collector—imposes burdens on the State significantly greater than the several relatively easy options outlined above." Id. (internal citation omitted).

Estrella De Oro focuses on the language from <u>Jones</u> stating that, while due process does not require that a property owner receive actual notice of a tax sale, "the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." <u>Id.</u> at 230. Estrella De Oro argues this language is not limited to the facts at issue in <u>Jones</u>, but establishes a requirement that, whenever the government learns notice was ineffective, the government is required to take additional steps regardless of the steps already taken. Estrella De Oro's interpretation would require the government to embark on an open-ended search, with more intensive investigative steps required, if the prior steps failed apparently up to the point the taxpayer receives actual notice. This interpretation is foreclosed by the language quoted above in which the Court expressly rejected the claim that an "open-ended" search was required and even rejected the idea that a search of the local phone book was required. We read the language cited by Estrella De Oro as simply meaning that if one form of notice accomplishes actual notice, no other notice is constitutionally required. Here, every one of the types of notice identified as reasonable by the Supreme Court in <u>Jones</u> were used. This notice satisfied constitutional due process.

In <u>Vosilla</u>, the Florida Supreme Court held that due process was violated "when the taxing authority has received a change of address from the property owner but sends the tax sale notice to the owner's former address." <u>Vosilla</u>, 944 So. 2d at 291. That did not happen here. To the contrary, Estrella De Oro never bothered to update its address. In fact, Estrella De Oro's failure not only removes this case from the ambit of <u>Vosilla</u>, it brings this case within the ambit of <u>Kidder v. Cirelli</u>, 821 So. 2d 1106 (Fla. 5th DCA 2002), a Fifth District case which the Supreme Court cited with approval in <u>Vosilla</u>. In that case, the Fifth District held that due process was not violated when notice was sent to the address provided by the taxpayer who failed to update his address: "No claim is made that [the owner] ever took any steps to provide a correct address to taxing authorities or discover why he was not receiving tax bills. A person in the position of [the owner] has no right to complain that the clerk did not look hard enough for him." <u>Vosilla</u>, 944 So. 2d at 296 (quoting <u>Kidder</u>, 821 So. 2d at 1107).

Nor does <u>Delta</u> support Estrella De Oro's position. In <u>Delta</u>, the Supreme Court held "where a notice sent by certified mail is returned undeliverable, the clerk of court must take additional reasonable steps to notify a titleholder of the upcoming tax sale." <u>Delta Prop. Mgmt.</u>, 87 So. 3d at 771. The Court then identified the steps it considered reasonable:

13

> Pursuant to <u>Jones</u> and <u>Vosilla</u>, the Clerk had a duty to take additional, reasonable steps to attempt to provide notice to the legal titleholder before selling the property. As identified by those decisions, those reasonable steps depend on the particular circumstances of the case and may include: checking the records of the taxing authorities for a change of address submitted by the legal titleholder; resending notice by regular mail so that no signature is required; posting notice on the property to be sold, not merely at the last known address of the titleholder; or sending a notice addressed to "occupant" by regular mail.

<u>Id.</u> at 773 (footnote omitted). Significantly, the notice provided to Estrella De Oro in this case encompasses the reasonable steps identified by both the United States Supreme Court and the Florida Supreme Court as summarized in <u>Delta</u>. While there may be other steps required in other circumstances, it is clear that the steps do not include the type of open-ended search of government records, including the Florida Division of Corporation's corporate records, argued by Estrella De Oro.

Accordingly, the judgments under review are reversed and the case is remanded.